King Motor Company, Inc. v. Commissioner.
King Motor Co. v. Commissioner
Docket No. 65970.
United States Tax Court
T.C. Memo 1957-242; 1957 Tax Ct. Memo LEXIS 10; 16 T.C.M. (CCH) 1118; T.C.M. (RIA) 57242; December 30, 1957
*10 Petitioner is an automobile dealer and sells automobiles with down payment of cash or trade-in payment with balance of purchase price being payable in monthly installments provided for in conditional sales contracts. Petitioner sold some of these contracts to a finance company which remitted part of the sales price in cash and credited part to petitioner in a "Special Reserve Account." It was provided in the contract that amounts accumulated to petitioner in the special reserve account were to be held by the finance company until such time as those amounts equal or exceed 3 per cent of "our retail outstandings with you." It has been stipulated that "At no time in 1953 or 1954 did the amount in the 'Special Reserve' account exceed three percent of the outstanding balance on conditional sale agreements purchased by American Discount Company from petitioner." Petitioner in its income tax returns excluded from its gross income the amounts credited in each of the taxable years to its special reserve account. The Commissioner in his determination of the deficiencies has included these amounts in petitioner's gross income. Held, the Commissioner is sustained. Percy E. Godbold, Jr., C.P.A., Box 1366, Anniston, Ala., for the petitioner. Lester R. Uretz, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion BLACK, Judge: The Commissioner has determined deficiencies in petitioner's income tax for the calendar years 1953 and 1954 in the respective amounts of $1,454.36 and $1,177.59. The deficiency for 1953 is due to one adjustment made by the Commissioner to the net income reported by petitioner on its return for that year, which adjustment was "(a) Finance Reserve Income $4,847.86." The deficiency notice explained this adjustment as follows: "(a) It is determined that income realized by you from dealers finance reserve *12 and not reported on your return for the taxable year ended December 31, 1953 constitutes income for that year in the amount of $4,847.86 under the provisions of section 22 of the Internal Revenue Code of 1939." The deficiency for the year 1954 is due to a similar adjustment as that made for 1953, except it is for a somewhat smaller amount. The explanation of the adjustment for 1954 is explained in the deficiency notice in the same manner as for 1953, except that the statute referred to is section 61 of the Internal Revenue Code of 1954. The petitioner assigns error as to these adjustments as follows: "In determining the tax liability in 1953 and 1954 the Commissioner added to taxable income in each year an increase in a Finance Reserve held by American Discount Company and not available to the taxpayer. This is erroneous as this Finance Reserve is only a contingent asset and is not available and may never be available to petitioner." [Findings of Fact] The facts have all been stipulated and are found as stipulated. These facts may be summarized as follows: The petitioner is an Alabama corporation, having its principal place of business in Anniston, *13 Alabama. It filed its income tax returns for the calendar years 1953 and 1954 with the district director of internal revenue at Birmingham, Alabama. Petitioner was organized on January 1, 1948, for the purpose of buying, selling, and servicing new and used automobiles, and this continued to be its business during the taxable years involved in this proceeding. The petitioner keeps its books and files its income tax returns on an accrual basis of accounting. A substantial portion of petitioner's sales of automobiles during the taxable years in issue was made under conditional sale agreements under which the purchaser, after making a down payment, agreed to pay the balance of the purchase price, plus financing charges and other charges, over a period of time. The conditional sale agreements provided that the contract might be assigned and that title to the car would remain in the seller or assigns until all amounts due under the contract were paid in full. At all times during the taxable years involved there was in force and effect between petitioner and American Discount Company a "Dealer Reserve Agreement" pursuant to which petitioner sold conditional sale agreements to American *14 Discount Company. The dealer reserve agreement entered into by petitioner and American Discount Company on March 2, 1953, which remained in full force and effect for the balance of the taxable period here involved, provided as follows: [1]
"TO: AUTO FINANCE COMPANY/or AMERICAN DISCOUNT COMPANY: "1. You propose to buy from us on a non-recourse plan with dealer participation, paper, hereinafter called 'contracts,' acceptable to you covering new and used cars and this agreement states the basis of purchase. "2. In consideration of the purchase by you of such acceptable contracts under this agreement, it is agreed that if you repossess or recover any cars covered by said contracts, for any reason, you will give us the refusal of purchasing such cars where located, from you for cash, the purchase price, payable on demand, being the unpaid balance due on the car. However, if for any reason, we do not repurchase *15 the repossessed car from you, we agree that any loss resulting from the sale of the car by you will be charged to the 'Special Reserve' account as set up below. Any cars returned to us for repurchase will, until payment is made, be stored at our risk and expense and as your property, and will be delivered to you on demand. "It is fu* * *stood that we have no l* * * losses which would norma * * *ed to as '3-C LOSSES' * * *ler 'REPURCHASE PLAN' and such losses will NOT be charged to this 'Special Reserve' account as set up below. These losses wil* * *hose due to confiscation, c* * * conversion. "3. Your standard Rate Charts will include the following Dealer Reserve: "17 1/2% Gross Finance Charges. $17.50 per deal held in Special Reserve. "No Reserves are to be set up on short term notes, demonstrators, or other special plans, announced by you from time to time, except as may be hereafter agreed upon in writing. Payments from the 'Regular Reserve' account on both new and used cars will be payable to us on demand. Amounts accumulated in the 'Special Reserve' account are to be held by you until such time as these amounts equal to or exceed 3% of our retail outstandings with you. *16 Amounts in the 'Special Reserve' account in excess of 3% of our retail outstanding with you are payable to us on demand. It is understood that the above reserves will be subject to a minimum net finance charge of * * * on each contract. "On special rate transactions, if a reserve is payable, we will receive in reserve the same ratio or percentage as the special rate bears to your standard rate. "4. If you refun* * *t of the service * * *ecause a contract is pre* * * agree to pay you the same percentage of all reserves credited to or paid us on the contract as the amount of service charge refund bears to the amount o* * *ginal charge exc* * * insurance premiums. If * * *ount is paid off within 30 days, the reserve may be cancelled flat. "5. We shall have full recourse endorsement liability without any protection whatsoever if we make any settlement with a purchaser without your written consent, disclose any provision of this agreement directly or indirectly to the purchaser, or breach any provisions of the assignment to you, and in such cases you are hereby authorized to make any necessary corrections in our endorsement. "6. This agreement shall apply to all contracts hereafter *17 sold to you and endorsed without recourse, unless otherwise specifically agreed in writing with respect to the particular contract, irrespective of transfers between purchasers and until the contract is liquidated. No waiver or change of any provision shall be binding on you unless evidenced by writing signed by one of your officers and this agreement shall inure to and bind our respective successors and assigns and any company affiliated with you which may transact business hereunder and shall be construed as a contract under the laws of the State where accepted by you. "7. This agreement may be terminated by either party by giving the other written notice. It is understood that such termination will not affect the terms of this agreement with respect to contracts purchased prior to the receipt of the notice of termination. "ACCEPTED: AUTO FINANCE COMPANY/or AMERICAN DISCOUNT COMPANY "SIGNED: DEALER By /s/ W. C. Wooten, Jr. "King Motor Co., Inc Corporate, Individual or Firm Name" In the years 1953 and 1954, petitioner received the following amounts from the regular reserve account of American Discount Company and included these amounts in its taxable income: Year
Amount
1953
$12,030.53
1954
12,834.57
*18 The balance in the petitioner's special reserve account on the books of American Discount Company was as follows: December 31, 1952
0
December 31, 1953
$4,847.86
December 31, 1954
8,773.17
The amounts credited to the special reserve account in 1953 and 1954 were not carried through to, or reflected in, the gain or loss accounts on the petitioner's books and were not reported as taxable income for the taxable years here involved. At no time in 1953 or 1954 did the amounts in the special reserve account exceed 3 per cent of the outstanding balance on conditional sale agreements purchased by American Discount Company from petitioner. Petitioner prepared conditional sale agreements on forms supplied by American Discount Company, obtained prior credit approval from American Discount Company, and used rate charts supplied by American Discount Company. Petitioner used the specific chargeoff method of deducting bad debts on its books and on its income tax returns. On its return for 1953, petitioner deducted 30 bad debts ranging in amounts from eighteen cents to $227.97, and all aggregating $1,078.79. In his determination of the deficiency for 1953, the Commissioner *19 has not disallowed any of these bad debts. In its return for 1954, petitioner deducted 30 bad debts ranging in amounts from 93 cents to $155.19, and all aggregating $1,028.54. In his determination of the deficiency for 1954, the Commissioner has not disallowed any of these bad debts. Petitioner concedes that the amounts placed in its regular reserve account by American Discount Company in the years 1953 and 1954 should not be excluded from its taxable income. Petitioner has included these amounts, $12,030.53 for 1953 and $12,834.57 for 1954, in its returns for those years. As to these amounts there is no issue. However, petitioner contends that the amounts placed in its special reserve account by the American Discount Company, $4,847.86 for 1953 and $3,925.31 for 1954, should be excluded from its gross income for those years. The Commissioner has added these amounts to the income reported by petitioner on its returns. The petitioner assails this action of the Commissioner as error on the ground that the amounts placed by American Discount Company in petitioner's special reserve account were only a contingent asset and were not available to petitioner in the taxable years and may *20 never be available to it. The provisions of the contract which petitioner had with American Discount Company relating to the special reserve account are contained in the copy of the contract which we have included herein. These provisions read, in part, as follows: "Amounts accumulated in the 'Special Reserve' account are to be held by you until such time as these amounts equal to or exceed 3% of our retail outstandings with you. Amounts in the 'Special Reserve' account in excess of 3% of our retail outstandings with you are payable to us on demand. * * *" It is petitioner's primary contention that because it has been stipulated "At no time in 1953 or 1954 did the amount in the 'Special Reserve' account exceed three percent of the outstanding balance on conditional sale agreements purchased by American Discount Company from petitioner," that none of the amounts credited to petitioner's special reserve account during the taxable years can be properly included in petitioner's income. We disagree. The issue we have here to decide is the same as that decided this day in Evans Motor Co., 29 T.C. -. The facts in the instant case are essentially the same as those in the Evans Motor *21 Co. case; there are no differences except as to amounts, etc. Our decision in the instant case on the only issue involved must naturally be the same as in the Evans Motor Co. case. In the latter case we discussed fully the issue involved and gave our reasons why we thought the decision must be for the Commissioner. There would be no need to repeat that discussion here. Upon authority of Evans Motor Co. we sustain the Commissioner in his determination of the deficiencies. Decision will be entered for the respondent. Footnotes
1. The strikeovers [shown here by asterisks] which appear in the Dealer Reserve Agreement appear in the copy attached to the stipulation and the instrument itself has been copied exactly as it appears. No point or explanation of these strikeovers has been made by the parties.↩